**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

ERIC N. DRAPER                                                                        PLAINTIFF

V.                                                                       NO. 4:15-CV-00032-DMB-DAS

SGT. KATHERINE MOORE, ET AL.                                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Eric N. Draper, proceeding *pro se* and *in forma pauperis*, filed suit under 42 U.S.C. § 1983 against Defendants Sgt. Katherine Moore, Deputy Warden Andrew Mills, and Michael Weeks, alleging that he was denied the opportunity to obtain medical care while he was in the custody of the Mississippi Department of Corrections ("MDOC"). Doc. #1. On November 17, 2015, Defendants moved for summary judgment under Federal Rule of Civil Procedure 56, and Draper responded to the motion on December 14, 2015. Docs. #35 & #43. For the reasons that follow, summary judgment will be granted.

**I
Summary Judgment Standard**

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) & (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if "its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

1

The nonmovant cannot rely upon "conclusory allegations, speculation, and unsubstantiated assertions" to satisfy his burden, but rather, must set forth specific facts showing the existence of a genuine issue as to every essential element of his claim. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted). *See also Morris*, 144 F.3d at 380. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no proof is presented, however, the Court does not assume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## II
## Background and Procedural History

Draper, a sixty-two-year-old inmate, is housed at the Mississippi State Penitentiary. Doc. #35-1 at 2-3. Beginning October 27, 2014, Draper was prescribed twice weekly physical therapy treatments to address pain in his lower back and shoulder. Doc. #35-2 at 82. On November 13, 2014, Draper submitted a sick call request, complaining of pain. *Id.* at 88. At that time, he complained to medical professionals that his physical therapy was "not helping a lot." *Id*. At a number of appointments[1] between November 2014 and February 2015, Draper either refused treatment or left without being seen. Doc. #35-3 at 2-27. Physical therapist Haley Drew discharged Draper from care on February 2, 2015, "for failure to attend scheduled appointments. Of his last 5 scheduled appointments, he has only attended 1 of them. He either refused the others

---

[1] Specifically, Draper refused treatment or left without being seen on the following dates: November 17, 2014; November 25, 2014; December 3, 2014; December 8, 2014; December 10, 2014; December 22, 2014; December 29, 2014; January 14, 2015; January 21, 2015; January 28, 2015; and February 2, 2015. Doc. #35-3 at 2-6, 10, 12, 21, 22-23, 25, 26. Draper cited various reasons for his refusals, including back pain, stomach aches and head colds, and that the process was taking too long. Doc. #35-2 at 6-13.

or left without being seen." *Id.* at 27.

Draper has since requested and received medical attention several times since being discharged from physical therapy.[2]

On February 4, 2015, Draper submitted an "Offender Request Form" to Defendant Mills, in which he claimed that he had been denied the opportunity to keep his scheduled appointments. Doc. #35-1 at 41. Specifically, Draper claimed that, on February 4, 2015, he was berated for contacting a staff member about an appointment and that Defendant Weeks then refused to assist him in keeping his appointment. *Id*.

On February 9, 2015, Mills sent Draper a letter in reply, stating that Draper had missed a number of appointments between November 2014 and February 2015, because he had either signed a refusal of treatment or left the infirmary without seeing a doctor. Doc. #35-1 at 42. Mills also stated that Draper had been discharged from treatment on February 2, 2015, and had no further appointments to attend. *Id*. Mills further stated that "[t]his information proves that [your allegations] are false statements. For providing false statements to a staff member, I will be issuing a RVR to you." *Id*.

On February 9, 2015, a Rule Violation Report ("RVR") for lying to an employee was issued and delivered to Draper. Doc. #43 at 23. At the time of the delivery of the report, Draper indicated that he neither requested witnesses nor waived his right to a hearing. *Id*. A hearing was held on February 13, 2015, and Draper was found guilty, resulting in a loss of privileges for fifteen days. *Id*.

---

[2] Draper requested refills for his medication on March 11, 2015, and received them March 12, 2015. Doc. #35-3 at 73. He requested treatment for hurting his leg on March 25, 2015, and was seen March 27, 2015. Doc. #43 at 26. On April 20, 2015, he requested treatment for back and leg pain and was seen April, 23 2015. Doc. #35-3 at 76. Draper requested medical attention for his "chronic care ailments" on May 17, 2015, and was seen May 19, 2015. *Id.* at 77. He requested follow up for "chronic care" on May 27, 2015, and was seen June 1, 2015. *Id.* at 78.

On March 20, 2015, Draper filed his complaint alleging that he was denied medical treatment and that when he wrote to Deputy Warden Mills about the issue, he was retaliated against. Doc. #1. Draper additionally claims that he was "unjustly sentenced" at his hearing. *Id*. at 3.

On November 17, 2015, Defendants moved for summary judgment. Doc. #35. Draper responded to the motion on December 14, 2015. Doc. #43. Defendants did not reply.

## III
## Analysis

In their motion, Defendants claim they are entitled to both sovereign and qualified immunity in this case, which they argue entitles them to summary judgment.

### A. Sovereign Immunity

The Eleventh Amendment to the United States Constitution bars suits by private citizens against states in federal courts unless the particular state has waived its immunity, or Congress has abrogated the state's sovereign immunity. U.S. Const. amend. XI; *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 326 (5th Cir. 2002). Mississippi has not waived its sovereign immunity. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). The Mississippi Department of Corrections ("MDOC") "is considered an arm of the State of Mississippi" and is immune from suit. *See Williams v. Miss. Dep't of Corrections*, No. 3:12-CV-00259-CWR-FKB, 2012 WL 2052101 at *1 (S.D. Miss. June 6, 2012). *See also* Miss. Code Ann. § 47-5-1, *et seq*.

In their motion for summary judgment, Defendants assert the defense of sovereign immunity as to the claims against them in their official capacities. Doc. #36 at 3-4. Specifically

4

Defendants argue that because they are employees and officers of MDOC, they are entitled to "immunity against Plaintiff's monetary damage claims against them in their official capacity." *Id.* at 4. Draper does not address Defendants' arguments about sovereign immunity in his response. Doc. #43 at 1-3.

Defendants are employees of the MDOC, which entitles them to Eleventh Amendment immunity as to the monetary claims against them in their official capacities.[3] *See Smith v. Leflore Cty., Miss.*, No. 4:14-CV-00127-NBB-JMV, 2015 WL 5655830, at *2 (N.D. Miss. Sept. 24, 2015). Accordingly, to the extent Draper's claims are brought against Defendants in their official capacities, summary judgment is appropriate.

### B. Qualified Immunity

Qualified immunity protects governmental employees from individual civil liability as long as their conduct does not violate clearly established "constitutional rights of which a reasonable person would have known." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). It is a defense that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

An evaluation of the issue of qualified immunity requires courts to conduct a two-pronged inquiry: (1) whether a clearly established constitutional right would have been violated on the facts alleged, and (2) "whether the defendant's actions were objectively unreasonable in light of the clearly established law at the time of the conduct in question." *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (citation omitted). A defendant's actions are deemed "objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then

---

[3] An exception to sovereign immunity exists in cases of prospective injunctive relief. *See, e.g., Ex Parte Young*, 209 U.S. 123 (1908). Draper's claim for prospective injunctive relief in the form of medical care is not barred by sovereign immunity but the Court finds his claim is without merit, as addressed below.

known" that the conduct at issue violated clearly established law. *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citation omitted) (emphasis in original). The sequence of the two-prong inquiry is not mandatory; a court may rely upon either prong of the defense in its analysis. *See, e.g., Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citation omitted).

Once qualified immunity has been pleaded by a defendant, the plaintiff bears the burden of rebutting the defense "by establishing that the official's allegedly wrongful conduct violated clearly established law." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2003) (citation and internal quotation omitted). This burden does not allow him to "rest on conclusory allegations and assertions," but rather requires a plaintiff to "demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

In their motion for summary judgment, Defendants claim the defense of qualified immunity as to the claims against them in their individual capacities. Doc. #36 at 5-6. Specifically, Defendants argue that Draper cannot demonstrate that Defendants violated a clearly established right and that Defendants actions were objectively reasonable.

### 1. Clearly Established Right

In his complaint, Draper alleges he was denied medical attention and was retaliated against for writing to Deputy Warden Mills. Doc. #1 at 2-4. Draper further alleges that, at his hearing, he was not allowed to call witnesses and "was given a punishment denying [him] medical attention." *Id.* at 3. Defendants, in their motion for summary judgment, argue that Draper cannot demonstrate that a clearly established right was violated with regard to his claims of denial of medical treatment, retaliation, and deprivation of due process. Doc. #36 at 5-6.

6

### a. Medical Treatment

The government is obligated "to provide medical care for those whom it is punishing by incarceration" and deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1978). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Under this standard, a state actor is not liable under § 1983 unless the plaintiff alleges facts which, if true, would demonstrate that the prison official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Id*. at 847.

Negligent conduct by a prison official does not give rise to a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 334-36 (1986); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Even if physicians misdiagnose or mistreat a prisoner's condition in what amounts to medical malpractice, a prisoner cannot sustain a § 1983 claim without a showing of deliberate indifference. *See, e.g., Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (finding medical malpractice alone does not support §1983 cause of action). In addition, a prisoner's disagreement with the course of medical treatment chosen will not support a claim of deliberate indifference. *See, e.g.*, *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Rather, liability under the deliberate indifference standard requires the prisoner plaintiff to produce evidence "that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Davidson v. Texas Dept. of Crim. J.*, 91 F. App'x 963, 965 (5th Cir. 2004) (citation omitted). *See also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (deliberate indifference requires inmate to show

prison officials engaged in conduct that "clearly evince[s] a wanton disregard for any serious medical needs").

Draper, who has repeatedly complained of chronic neck, back, and shoulder pain, alleges in his complaint that Defendants violated his constitutional right to adequate medical care when they failed to transport him to his physical therapy appointments. Doc. #1 at 3. In their motion for summary judgment, Defendants argue that the evidence in the record demonstrates that Draper voluntarily refused physical therapy treatments on numerous occasions, and that he did receive medical treatment when he kept his appointments. Doc. #36 at 6-8. Defendants also argue that there is no evidence of deliberate indifference on their part. *Id*. at 7-8. In his response in opposition to summary judgment, Draper argues that he has witnesses that will testify that Officer Weeks refused to "assist him with getting transportation to" physical therapy on February 4, 2015. Doc. #43 at 2.

Draper was prescribed twice-weekly physical therapy treatments beginning October 27, 2014. Doc. #35-2 at 82. While he did not receive treatment at a variety of appointments between November 2014 and February 2015, in each instance he either signed a refusal of treatment or left without being seen. Docs. #35-3 at 2-27; #35-2 at 6-13. He was discharged from therapy on February 2, 2015, for failing to attend his scheduled sessions. Doc. #35-3 at 27. Draper continued to receive medical care, including medications, for his chronic pain after his discharge from physical therapy on February 2, 2015. *Id.* at 29-56.

Despite Draper's argument that he can procure witness testimony regarding Week's statement, there is no evidence in the record suggesting that Draper did not receive treatment because Defendants failed to transport him to his appointments. Rather, Draper's medical records indicate that any failure to receive treatment on the days Draper had scheduled appointments was

8

the result of him either refusing treatment or leaving without being seen. Doc. #35-2 at 2-13. Accordingly, the Court finds that the record refutes Draper's allegation that he was prevented from attending physical therapy sessions and demonstrates instead that Defendants did not deny him medical treatment. As such, Draper cannot meet his burden of establishing that Defendants denied him treatment in violation of his constitutional rights.

### b. Retaliation

It is settled law that prison officials cannot retaliate against an inmate for filing a grievance. *See, e.g.*, *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). To state a claim of retaliation, an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive, the complained of incident—such as the filing of disciplinary reports as in the case at bar—would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quotations omitted).

Additionally, "retaliation against a prisoner is actionable only if it is capable of deterring a prisoner of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted). Courts are to view retaliation claims skeptically, "lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods*, 60 F.3d at 1166 (citation omitted). Accordingly, *de minimis* reactions to protected speech—such as minor inconveniences or discomfort—will not satisfy that requirement. *See Morris*, 449 F.3d at 685-86. An inmate's personal belief that he is a victim of retaliation, without more, is insufficient to state a claim. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).

In his complaint, Draper claims that he received an RVR because he wrote to Mills, stating that he would take legal action. Doc. #1 at 3. Defendants, in their summary judgment motion,

9

argue that the RVR was "true and correct and [Draper] cannot show that 'but for the retaliatory motive' the RVR would not have been written." Doc. #36 at 10. In his response, Draper argues that he was not informed that he had been discharged from treatment and that while he was permitted to refuse treatment, the staff was not permitted to refuse a request for service.

In support of their argument, Defendants produced Draper's medical records, Draper's letter of complaint to Mills, the RVR at issue, and Mills' written response to Draper's letter to demonstrate that there were valid grounds for issuing the RVR. Doc. #35-1 at 40-42; Doc. #35-3 at 2-56. Mills' letter addresses his investigation of Draper's complaints, identifying ten dates between November 25, 2014, and February 2, 2015, on which Draper either voluntarily refused treatment or left the infirmary before he could be treated, after which Draper was then discharged from the program and had no further appointments. Doc. #35-1 at 42. Draper's signed refusal-of-treatment forms record each time he voluntarily refused to come to the infirmary for physical therapy, and support Mills' conclusion that the appointments were not missed as a result of Draper being denied the opportunity to keep the appointments. Doc. #35-2 at 6-13. Defendants have thus established that Mills had a motive beyond retaliation for issuing Draper an RVR for filing a false complaint and, accordingly, Draper cannot demonstrate that the RVR would not have been written absent a retaliatory motive.

### c. Due Process

In order to establish a due process violation in connection with a prison disciplinary hearing, a prisoner must establish that he has been denied a "liberty interest" that was infringed or affected by the prison action. *Richardson v. Joslin*, 501 F.3d 415, 419 (5th Cir. 2007). Generally, protected liberty interests are "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due

Process Clause of its own force…nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472,484 (1995) (citations omitted). In *Sandin*, the discipline administered the prisoner was confinement in isolation, which the court found "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest" that would entitle the prisoner to procedural due process protections. *Id.* at 486. A loss of privileges does not implicate the due process clause. *See also Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (prisoner's thirty-day loss of commissary privileges and cell restriction due to disciplinary action failed to give rise to due process claim).

In his complaint, Draper alleges that he was unjustly sentenced when Defendant Katherine Moore, the hearing officer listed on the RVR at issue in this case, refused to allow him to call witnesses at his disciplinary hearing and found him guilty of the false RVR in violation of his rights to due process. Doc. #1. In their summary judgment motion, Defendants argue that Draper did not request witnesses when the RVR was delivered, that the resulting loss of privileges does not trigger the due process clause, and that the evidence of Draper's guilt was overwhelming. Doc. #36 at 11-12. Draper, in his response, reiterates his claim that he was denied medical treatment as punishment, and claims that his punishment was initiated before he was sentenced. Doc. #43 at 2-3. Draper additionally alleges that "an attempt was made to correct or cover up" the fact that he was punished before the hearing. *Id*. at 2.

Defendants argue that Draper's records show that he signed for the RVR when it was delivered to him on February 9, 2015, and that he did not request witnesses. Doc. #43 at 23. However, Draper claims that he requested witnesses to appear on his behalf at the time of the disciplinary hearing and was informed by prison officials "that it was too late ...." Doc. #1 at 3.

Prisoners facing disciplinary proceedings are entitled to certain rights—such as the right to call witnesses—under the Due Process Clause when the result of the disciplinary action will interfere with a constitutionally protected liberty interest. *See Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). However, liberty interests protected by due process "are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). *See also Sandin*, 515 U.S. at 483-84. Here, Draper lost privileges for fifteen days as punishment for his violation; his sentence was not affected as a result of the disciplinary conviction. Doc. #43 at 23. Therefore, Draper's claim, even broadly construed, does not implicate due process concerns.

Moreover, based on the medical records, evidence of his guilt was established and therefore, his allegation that the RVR was false likewise fails to implicate a due process right. *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 457 (1985) (procedural due process requires only "some evidence" to support findings made in disciplinary hearing). Accordingly, Draper fails to state a due process violation.

### 2. Objective Reasonableness

In cases where "the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have then known that the alleged acts of the defendants violated the United States Constitution." *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 460 (5th Cir. 2001) (citing *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997)). In evaluating such, a court considers "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). "Pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every

like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Pasco v. Knoblauch*, 566 F.3d 572, 578-79 (5th Cir. 2009) (citing *Pierce*, 117 F.3d at 882).

Defendants, in their summary judgment motion, argue that even if Draper could prove that an established right was violated, he cannot demonstrate that Defendants acted in an objectively unreasonable manner. Doc. #36 at 12-13. Draper does not address Defendants' objective reasonableness argument in his response and has not submitted any evidence suggesting that all reasonable officers in a similar situation would have known that Defendants' actions violated the Constitution. Accordingly, he is unable to establish meet his burden in this case. *See Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citations omitted).

### C. Summary

The evidence does not show that Defendants' actions violated any clearly established constitutional right of Draper, nor does it show that Defendants' actions were objectively unreasonable in light of the circumstances. Defendants are entitled to summary judgment as a matter of law.

### IV
### Conclusion

For the reasons herein, Defendants' motion for summary judgment [35] is **GRANTED**, and Draper's claims against Defendants will be dismissed with prejudice as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B). A separate final judgment consistent with this ruling will follow.

**SO ORDERED**, this 1st day of February, 2016.

/s/ **Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**